IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NICHOLAI RIFKIND, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-1838 |
| WELLS FARGO CLEARING SERVICES, LLC d/b/a WELLS FARGO ADVISORS,[1] | * | |
| | * | |
| Defendant. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Nicholai Rifkind's Motion to Remand (ECF No. 5) and Motion to Modify or Correct FINRA Arbitration Award, or in the Alternative, to Vacate and Request for Hearing (ECF No. 1-5). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[2] For the reasons set forth below, the Court will deny the Motions.

---

[1] The Court will direct the Clerk to correct the name of Defendant as provided in the caption.

[2] The Court recognizes that Rifkind has requested a hearing on his Motion to Modify. Having determined that no hearing is necessary to understand the issues underlying the Motion, the Court will deny the request.

## I. BACKGROUND[3]

### A. Rifkind's IRA with Wells Fargo

Self-represented Plaintiff Nicholai Rifkind opened an IRA account with Defendant Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo") in 2007, funding the account with about $49,000. (Statement Claim ["Claim"] at 1, ECF No. 8-1).[4] He alleges that an employee of Wells Fargo told him that the rate of return would "be about 4.5%," but certainly over 4.25%. (Id.). Rifkind contends that he began receiving statements from Wells Fargo five to six years ago and discovered "that there was no interest applied." (Id.). He called Wells Fargo "many times" to resolve his concerns regarding his account. (Id.). Eventually, someone at Wells Fargo "explained that interest was paid at the beginning and very soon after stopped being paid." (Id.). Wells Fargo credited Rifkind's account with $400 and a small amount of interest. (Id.). Later, a representative named Katrina Hubbard offered Rifkind "a settlement of [an] additional $440" if he accepted within thirty days. (Id.). Rifkind did not reply. (Id.).

### B. Arbitration

Rifkind initiated arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") on March 20, 2020. (See Sept. 1, 2020 FINRA Notice at 1, ECF No.

---

[3] "On a motion to remand, 'federal courts consider the facts disclosed on the record as a whole.'" Medish v. Johns Hopkins Health Sys. Corp., 272 F.Supp.3d 719, 721 n.1 (D.Md. 2017) (quoting Capitol Cake Co. v. Lloyd's Underwriters, 453 F.Supp. 1156, 1160 n.5 (D.Md. 1978)).

[4] The electronic document accessible at ECF No. 8-1 contains multiple exhibits to Wells Fargo's Opposition to Rifkind's Motion to Vacate. The Statement of Claim may be found at page 10 of ECF No. 8-1, using the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

8-1).[5] On September 1, 2020, FINRA sent Wells Fargo a copy of Rifkind's Statement of Claim. (Id.). In it, Rifkind alleges that if Wells Fargo had properly managed his account, his $49,000 principal sum would have grown to $86,837.61, assuming a rate of return of 4.5%. (Claim at 1). Rifkind requests compensatory damages in the amount of $37,892.61, the claimed loss of interest, plus punitive damages of $12,500. (Id.). Wells Fargo filed its Answer on October 21, 2020. (See Award at 1, ECF No. 8-3).[6] The parties signed a Submission Agreement wherein they agreed to arbitrate under the FINRA By-Laws, Rules, and Code of Arbitration Procedure. (See Submission Agreement at 1, ECF No. 8-1; Award at 1).[7]

A merits hearing was held on March 19, 2021 before FINRA's Sole Public Arbitrator, Thomas J. Dolina ("Arbitrator Dolina"). During the hearing, Rifkind increased his demand to $100,000 "in total damages." (See Award at 2–4). Wells Fargo responded that Rifkind's claim was untimely and that he was responsible for the languishing account because he had not submitted the proper authorization forms "to permit Wells Fargo to invest the funds." (Def.'s Opp'n Rifkind's Mot. Vacate, Correct, Modify FINRA Arbitration Award ["Opp'n Mot. Modify"] at 1, ECF No. 8).

On March 24, 2021, Arbitrator Dolina issued an Award finding as follows:

> 1. [Wells Fargo] is liable for and shall pay to [Rifkind] the sum of $75.00 in compensatory damages.

---

[5] The September 1, 2020 FINRA Notice may be found at pages 2–7 of ECF No. 8-1, using the pagination assigned by the Court's CM/ECF system.
[6] Wells Fargo appears to have inadvertently only submitted the first page of its Answer for this Court's review. (See Statement of Answer at 1, ECF No. 8-2).
[7] The Submission Agreement may be found at page 11 of ECF No. 8-1, using the pagination assigned by the Court's CM/ECF system.

> 2. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, treble damages, and attorneys' fees, are denied.

(Award at 2). Although FINRA procedure allows for the parties to jointly request an "explained decision," which would have included Arbitrator Dolina's factual determinations and "the general reasons" behind the decision, there is no indication that the parties made such a request. (See Sept. 1, 2020 FINRA Notice at 7).

**C.      Procedural Background**

On or about May 28, 2021, Rifkind filed suit for review of the Award in the Circuit Court for Baltimore County, Maryland. See Rifkind v. Wells Fargo Advisors Fin. Network, LLC, No. C-03-CV-21-1657 (Cir.Ct.Md. filed May 28, 2021). On June 3, 2021, Rifkind filed a Motion to Modify or Vacate the FINRA Award under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11. (ECF No. 1-5).[8] Rifkind served Wells Fargo with the Motion to Modify on June 23, 2021. (Notice of Service at 1, ECF No. 1-1). On July 23, 2021, Wells Fargo removed the case to this Court on the bases of federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332. (Notice Removal at 2–4, ECF No. 1). On August 6, 2021, Wells Fargo filed its Opposition to Rifkind's Motion to Modify or Vacate. (ECF No. 8). To date, the Court has not received a Reply regarding the Motion to Modify or Vacate.

---

[8] Although Rifkind writes that his claims arise under §§ 11 and 12, liberally construing Rifkind's claims, the Court finds that they arise under §§ 10 and 11. See United States v. Brown, 797 F.App'x. 85, 89 (4th Cir. 2019) ("Federal courts are obliged to liberally construe filings by pro se litigants.").

4

On August 6, 2021, Rifkind filed a Motion to Remand the case back to state court arguing that this Court does not have diversity jurisdiction. (ECF No. 5). On August 9, 2021, Wells Fargo filed its Corporate Disclosure Statement. (ECF No. 10). On August 13, 2021, Rifkind filed a "Notification and Disclosure" regarding Wells Fargo's corporate citizenship as an apparent supplement to his Motion to Remand. (ECF No. 12). Wells Fargo filed an Opposition to the Motion to Remand on August 20, 2021, (ECF No. 13), and Rifkind filed a Reply on September 2, 2021, (ECF No. 16).

## II. DISCUSSION

### A. Rifkind's Motion to Remand

Before substantively reviewing the Motion to Modify or Vacate, the Court first addresses Rifkind's argument that the Court lacks subject-matter jurisdiction to hear this case. Wells Fargo removed under 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (See Notice Removal at 1). Rifkind contends that this Court lacks jurisdiction because the parties are not diverse. (See Mot. Remand at 1–2, ECF No. 5). Specifically, he argues that Wells Fargo Clearing Services "was/is a part of Wells Fargo and Company," which he claims "is domiciled in multiple locations in the State of Maryland." (Id. at 1). In his "Notification and Disclosure" filing, an apparent supplement to his initial Motion to Remand, Rifkind adds that "Wells Fargo Bank, N.A." maintains branches in all fifty states and that Maryland in particular has eighty-eight branches. (Notification & Disclosure at 1, ECF No. 12). Wells Fargo responds that this Court indeed has grounds to hear this matter under both federal question jurisdiction and diversity jurisdiction. The Court addresses each type of jurisdiction in turn.

"An action brought in a state court may be removed only if the district court would have had original jurisdiction over the action." Medish v. Johns Hopkins Health Sys. Corp., 272 F.Supp.3d 719, 722 (D.Md. 2017). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Id. (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)). Here, that party is Wells Fargo. This Court "must strictly construe removal jurisdiction" as it "raises significant federalism concerns." Id. (quoting Mulcahey, 29 F.3d at 151). Original jurisdiction arises in two types of civil cases, those that relate to a federal question, i.e., claims "arising under the Constitution, laws, or treaties of the United States," and those where the amount in controversy is above $75,000 and the matter is between citizens of different states. 28 U.S.C. §§ 1331, 1332(a).

First, Wells Fargo argues that this Court has federal question jurisdiction because "Rifkind's cause of action unquestionably arises out of federal law," specifically, the FAA. ((Def.'s Opp'n Pl.'s Mot. Remand ["Opp'n Remand"] at 4, ECF No. 13). Rifkind responds that a state court may apply both federal and state law. (Reply Def.'s Opp'n Pl.'s Mot. Remand ["Reply Remand"] at 1, ECF No. 16). At bottom, the Court agrees with Rifkind and finds that it lacks federal question jurisdiction.

Congress passed the Federal Arbitration Act using its authority under the Commerce Clause and maritime law. McCormick v. Am. Online, Inc., 909 F.3d 677, 680 (4th Cir. 2018). Nonetheless, it is well-settled that the FAA itself does not confer federal jurisdiction over arbitration controversies. Id. Instead, litigants must have an "independent jurisdictional basis" to have their action heard in federal court. Id. (quoting Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581–82 (2008)); e.g., Vaden v. Discover Bank, 556 U.S.

6

49, 59 (2009); Choice Hotels Int'l, Inc. v. Shiv Hosp., LLC, 491 F.3d 171, 175 (4th Cir. 2007); Stone v. Wells Fargo Bank, N.A., 361 F.Supp.3d 539, 547 (D.Md. 2019). The Supreme Court has described this dynamic as an "anomaly," explaining that although the FAA "creates a body of federal substantive law" regarding arbitration, Hall St. Assocs., 552 U.S. at 581–82 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 25 n.32 (1983)), "[a]s for jurisdiction over controversies touching arbitration," the FAA "does nothing." Id. Accordingly, the fact that the arbitration underlying this lawsuit is governed by the FAA is insufficient on its own to create federal question jurisdiction.[9]

Wells Fargo argues next that "Rifkind concedes that this Court has federal question subject-matter jurisdiction" by not challenging removal on that ground in his Motion to Remand. (Opp'n Remand at 3–4, 4 n.2). That is not so. "[S]ubject matter jurisdiction cannot be conceded by any party; nor can it be granted by this Court in its discretion." Howes v. FINRA, Inc., 395 F.Supp.3d 608, 611 (D.Md. 2019) (quoting McGahey v. Giant

---

[9] Wells Fargo omits any reference to this precedent from its argument, citing only a footnote in Trademark Remodeling, Inc. v. Rhines ("Rhines I"), 853 F.Supp.2d 532 (D.Md. 2012), to support its contention that the FAA confers federal question jurisdiction. See id. at 536 n.2. In Rhines I, this Court addressed whether the homeowner plaintiffs had properly executed service upon the contractor defendant under the Maryland Rules, thereby starting the thirty-day deadline for the contractor to remove the case from state court to federal court, and whether the contractor had waived its right to remove. See id. at 539. In the factual background, the Court included a footnote with a cursory assessment of the jurisdictional issues present there, stating that the Court had diversity jurisdiction because the parties were diverse and also had federal question jurisdiction because the claim arose from the Federal Arbitration Act. See id. This lone decision, which notably did not directly address federal question jurisdiction under the FAA, does not carry the day. Both the Fourth Circuit and this Court have issued opinions substantively addressing jurisdictional issues under the FAA since Rhines I, and that law controls. See, e.g., McCormick, 909 F.3d at 680–81; Stone, 361 F.Supp.3d at 546–47; Evans v. Centennial Holding Co., No. TDC-21-0500, 2021 WL 5893976, at *1 (D.Md. Mar. 25, 2021).

Food, Inc., 300 F.Supp. 475, 477 (D.Md. 1969)) (internal quotation marks omitted). The fact that Rifkind, who is unassisted by counsel, did not raise specific arguments regarding federal question jurisdiction in his Motion to Remand does not and cannot provide this Court with federal question jurisdiction.

Wells Fargo's unavailing arguments regarding federal question jurisdiction are immaterial, however, as the Court has diversity jurisdiction to hear this dispute.[10] As stated, diversity jurisdiction exists where the controversy arose between citizens of different states and the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "For purposes of diversity jurisdiction, the citizenship of a limited liability company," like Wells Fargo, "is determined by the citizenship of all its members." Cent. W.Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). Here, Wells Fargo submits the affidavit of Beverly W. Jackson, Wells Fargo's Assistant Secretary. (Decl. Beverly W. Jackson ["Jackson Decl."] at 1, ECF No. 1-7). Jackson attests to the following:

> 3. Wells Fargo is a limited liability company organized and existing under the laws of the State of Delaware.

---

[10] The Court's federal question jurisdiction analysis would continue if diversity jurisdiction does not exist. In 2018, the Fourth Circuit adopted the "look through" approach in FAA cases. McCormick, 909 F.3d at 681. Under that approach, when the underlying dispute could be litigated in federal court, the federal court has jurisdiction to (1) compel arbitration; (2) supervise the arbitration's procedures; and (3) confirm, vacate, modify, and enforce the arbitration award. Id. at 683. Other circuits have adopted the "look through" approach as well. See Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 42–47 (1st Cir. 2017); Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 381–88 (2d Cir. 2016). The Supreme Court is currently considering an appeal from the Fifth Circuit on whether federal courts have subject-matter jurisdiction to confirm or vacate an arbitration award when the only basis for jurisdiction is that the underlying dispute involved a federal question. Badgerow v. Walters, No. 20-1143 (U.S. argued Nov. 2, 2021).

> 4. Wells Fargo's sole member is Wachovia Securities Financial Holdings, LLC . . . , a limited liability company organized and existing under the laws of the State of Delaware.
> 5. Wachovia's sole member is EVEREN Capital Corporation, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Charlotte, North Carolina.

(Id.). Rifkind is a citizen of Maryland. Accordingly, the parties appear to be diverse.

Rifkind argues in his Motion and supplement that other entities affiliated with Defendant, namely, Wells Fargo and Company and Wells Fargo, N.A, operate both nationally and within Maryland through their many local branches. (Notification and Disclosure at 1–2). Those arguments are not relevant to the citizenship determination, however, as neither Wells Fargo and Company nor Wells Fargo, N.A. are members or members of members of the LLC. (See Jackson Decl. at 1; Corporate Disclosure Statement at 1, ECF No. 10).

Finally, the amount-in-controversy requirement is met. "In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)). The circuits are split, however, on how to calculate the amount in controversy in cases where a party seeks to vacate or modify an arbitration award. See Smith v. Tele-Town Hall, LLC, 798 F.Supp.2d 748, 752 (E.D.Va. 2011) (citing cases). The Fourth Circuit has recognized the split but has not yet "opine[d] on this interesting question." Shiv Hosp., 491 F.3d at 175–76.

The United States District Court for the Eastern District of Virginia summarized the approaches taken by the circuits as follows:

> [C]ourts have taken three approaches to determining the amount in controversy in an application to confirm, modify, or vacate an arbitration award. Under the "award" approach, courts determine the amount in controversy by reference to the amount of the award regardless of how much was originally demanded in the arbitration proceeding. By contrast, under the "demand" approach, courts equate the amount in controversy with the amount sought in the original complaint or arbitration demand, regardless of the amount ultimately awarded. The final approach, known as the "remand" or "mixed" approach, takes a middle ground, namely that the amount in controversy in a suit challenging an arbitration award includes the matter at stake in the arbitration, provided the plaintiff is seeking to reopen the arbitration.

Smith, 798 F.Supp.2d at 752–53 (citations and internal quotation marks omitted). Here, it is certainly true that the $75 award would not be sufficient to confer jurisdiction under the award approach. (See Award at 2). Nonetheless, this Court agrees with the District of Virginia that the demand approach appears to be the soundest as it avoids jurisdictional "anomal[ies]" created under the award and remand approaches. See id. at 754.[11]

---

[11] The court explained:

> First, under the FAA, a federal court determines diversity jurisdiction over a petition to compel arbitration by reference to the amount in controversy in the parties' underlying dispute. Yet, under the award or remand approaches, a motion to confirm, vacate, or modify an arbitration award would be subject to a different jurisdictional rule based on the arbitration award and the relief sought by the parties' motion. . . . [Second,] [u]nder the award and remand approaches, a federal court would not have jurisdiction in a case where . . . the parties proceed directly to arbitration and then seek confirmation of an award that is below the jurisdictional amount required for diversity. But parties can perform an end-run around this limitation by bringing the claims to federal court first and then seeking an order staying the case and ordering the parties to proceed to

10

Accordingly, the amount-in-controversy threshold is met because Rifkind demanded $100,000 during arbitration. (See Award at 2).[12] With subject-matter jurisdiction to hear this matter, the Court turns to the merits.

**B.     Motion to Vacate or Modify Arbitration Award**

This Court's review of an arbitration award is "substantially circumscribed." Three S. Del., Inc. v. DataQuick Info Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (quoting Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006)). "[T]he scope of judicial

---

arbitration. . . . [Third,] [i]f parties forgo arbitration and litigate claims in federal court, the exercise of diversity jurisdiction would of course depend on the amount in controversy in the parties' claims. 28 U.S.C. § 1332(a). Yet, if the parties choose to arbitrate, then under the award or remand approaches, the parties may foreclose the possibility of federal review because the existence of jurisdiction will depend on the outcome of the arbitration. The demand approach, by contrast, removes this disincentive to arbitrate and permits the district court to exercise jurisdiction coextensive with the diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated.

Smith, 798 F.Supp.2d at 753–55 (citations and internal quotation marks omitted).

[12] Rifkind argues that this case does not meet the amount-in-controversy threshold even under the demand approach, because $41,744.67 of his $100,000 demand represents interest and therefore does not count toward the amount-in-controversy total under § 1332. (Reply Remand at 1, ECF No. 16). Rifkind is incorrect. It is true that the $41,744.67, up from the $37,892.61 claimed during arbitration, represents interest in a sense of the word: it is Rifkind's calculation of the 4.5% rate of return Wells Fargo allegedly guaranteed would accrue on his IRA account. Nonetheless, this is not the type of interest contemplated by § 1332, which excludes interest that is incidental or accessory to the matter in controversy and which arises solely as a penalty for delay in payment. See Brown v. Webster, 156 U.S. 328, 329 (1895); accord Merial Ltd. v. Rasnic, No. 2:10CV00033, 2010 WL 3663357, at *3 (W.D.Va. Sept. 15, 2010). Instead, the interest here is "an integral part of the aggregate amount of damages claimed" and is not based on a delay in payment. Md. Nat'l Bank v. Nolan, 666 F.Supp. 797, 798 (D.Md. 1987). Accordingly, the $41,744.67 in interest rightly counts toward the amount-in-controversy total.

review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Id. (internal quotation marks omitted) (quoting Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998)). The FAA includes statutory grounds on which a court may vacate, modify, or correct and award. See 9 U.S.C. §§ 10, 11. The Court may only vacate, modify, or correct an award "when the moving party has established one of the grounds listed in the statute or one of the limited grounds recognized at common law." Trademark Remodeling, Inc. v. Rhines ("Rhines II"), No. PWG-11-1733, 2012 WL 3239916, at *2 (D.Md. Aug. 6, 2012). The moving party must cite specific facts, not "bald faced allegations," in making this showing. Id. (quoting Colonna v. Hanners, No. AW-10-1899, 2011 WL 2175248, at *4 (D.Md. June 1, 2011)). The Court will consider the various grounds for vacation and modification raised by Rifkind in turn.

    **1.**    **Vacation**

The party seeking to vacate an award "must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." DataQuick, 492 F.3d at 527. The FAA includes four instances in which vacating the award is permitted: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators, or either of them"; (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which

the rights of any party have been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. There are also two common law grounds for vacating an award: (1) "where an award fails to draw its essence from the contract," and (2) where "the award evidences a manifest disregard of the law." DataQuick, 492 F.3d at 527.

First, Rifkind argues that Arbitrator Dolina "was partial (biased?)" by "accepting [Wells Fargo's] misleading answers" and allowing counsel for Wells Fargo "to misquote laws and regulations." (Mot. Modify at 3, ECF No. 1-5). Wells Fargo responds that Rifkind does not identify or substantiate specific facts that demonstrate partiality. Wells Fargo is correct.

To establish partiality, the moving party must "demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." 9 U.S.C. § 10(a)(2); ANR Coal Co., Inc. v. Cogentrix of N.C., Inc., 173 F.3d 493, 500 (4th Cir. 1999); Rhines II, 2012 WL 3239916, at *4. The Court considers four factors in making this determination: (1) "the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings"; (2) "the directness of the relationship between the arbitrator and the party he is alleged to favor"; (3) "the connection of that relationship to the arbitrat[or]"; and (4) "the proximity in time between the relationship and the arbitration proceeding." ANR Coal, 173 F.3d at 500.

Here, Rifkind asserts that Arbitrator Dolina was biased in favor of Wells Fargo because he did "not question[]" Wells Fargo's allegedly incorrect, "inappropriate

13

references to regulations." (Mot. Modify at 3–4). Rifkind argues that this demonstrates partiality because when he attempted to reference the Code of Federal Regulations, Arbitrator Dolina asked him "where [he] found it." (Id. at 4). Further, Rifkind argues that Arbitrator Dolina acted like he did not recognize Wells Fargo's mistakes in its recitation of legal standards during the arbitration. Rifkind's allegations are speculative and he offers no evidence linking Arbitrator Dolina financially, personally, or otherwise to Wells Fargo. Accordingly, the Court will not vacate the award under § 10(a)(2).

Next, Rifkind argues that the award should be vacated because it was "imperfectly executed" and therefore a final award was not made. (Mot. Modify at 2 (citing 9 U.S.C. § 10(a)(4)). He is incorrect. This Court may vacate an arbitration award if "the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). Here, Rifkind raises no specific arguments as to the execution of the award. In any event, there is no evidence to suggest that Arbitrator Dolina acted outside of the scope of his power. See Rhines II, 2012 WL 3239916, at *6. The Court will not vacate the award on this ground.

Rifkind raises no other statutory or common law grounds for vacating the award.[13] Accordingly, the Court will deny Rifkind's Motion to the extent he seeks to vacate the award.

---

[13] Wells Fargo also addresses vacation under the common law ground of manifest disregard of the law, "[t]o the extent Rifkind is arguing that the award should be . . . vacated because the award was wrongly decided." (Opp'n Mot. Modify at 9); see DataQuick, 492 F.3d at 527. As Rifkind does not raise this basis for vacation in his Motion, the Court need not consider it. (See generally Mot. Modify).

14

### 2.     Modification or Correction

Under the FAA, the Court may modify or correct an award in three circumstances: (1) where "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; (2) where "the arbitrator[] [has] awarded upon a matter not submitted to [him], unless it is a matter not affecting the merits of the decision upon the matter submitted"; and (3) where "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11.

Rifkind argues for modification on two grounds. He contends that Arbitrator Dolina may have intended to award him $75,000.00, and not the $75.00 listed in the award, and therefore the award should be modified because it (1) contains a material miscalculation, and (2) is otherwise imperfect in matter of form requiring modification under § 11(a). (Mot. Modify at 1). Rifkind is incorrect.

First, under § 11(a), the Court may modify an award where there is an evident material miscalculation. The award will only be altered where mathematical errors appear on the face of the award. Apex Plumbing, 142 F.3d at 194; Rhines II, 2012 WL 3239916, at *10. Here, Rifkind does not identify any mathematical errors. Instead, he speculates that Arbitrator Dolina may have mistakenly omitted three zeroes and awarded Rifkind "$75.00" when he intended to award him "$75,000." (Mot. Modify at 5). Rifkind's bald speculation is insufficient to demonstrate that Arbitrator Dolina made a mathematical error in computing his award. Accordingly, Rifkind has not met his burden under § 11(a).

Finally, under 9 U.S.C. § 11(c), the Court may modify an award where it "is imperfect in matter of form not affecting the merits of the controversy." Rifkind's argument here is the same as it was under § 11(a)—namely, that Arbitrator Dolina must have intended to award him $75,000. Again, Rifkind's contention is speculative and unsupported by the evidence.

Rifkind raises no other arguments regarding modification. Accordingly, the Court will deny Rifkind's Motion to the extent he seeks to modify or correct the award.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Rifkind's Motion to Remand and deny Rifkind's Motion to Vacate, Modify, or Correct the Award. A separate Order follows. Entered this 31st day of January, 2022.

/s/
George L. Russell, III
United States District Judge